IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

PHILLIP DEWAYNE STEWART                                                                PLAINTIFF

v.                                                Case No.6:15-CV-06078

SGT. KEVIN STARKEY,                                                                    DEFENDANTS
DARREN THRELKELD
(Chief of Field Security),
MARSHALL DALE REED,
WENDY KELLEY (ADC
Director), TERRIE
BANISTER (Disciplinary
Hearing Officer)

## OPINION AND ORDER

Plaintiff, Phillip Dewayne Stewart, filed this case *pro se* pursuant to 42 U.S.C. § 1983 on June 5, 2015, in the Eastern District or Arkansas. (Doc. 2). It was properly transferred to this District on July 22, 2015. (Doc. 3).

The case is before me for preservice screening under the provisions of the Prison Litigation Reform Act. Pursuant to 28 U.S.C. § 1915A, the Court shall review complaints in civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

**I.     BACKGROUND**

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC"), Varner Unit.  In his complaint, Plaintiff alleges Defendants Wendy Kelly and Marshal Reed violated his constitutional rights by "failing to correct" a disciplinary charge filed against him on

December 6, 2013, by Defendant Starkey.[1]  (Doc. 2, pp. 13, 22).  Plaintiff alleges Defendant Threlkeld wrongfully punished him by forwarding his disciplinary charge to the disciplinary hearing officer rather than dismissing the charge.  (Doc. 2, p. 32).  He alleges Defendant Banister wrongfully punished him, assigning him restrictions on telephone, visitation, and commissary.  (Doc. 2, p. 36).  Plaintiff alleges Defendant Starkey unlawfully questioned him about his December 18, 2013, grievance regarding the disciplinary charge during a routine cell search on February 5, 2014.  He alleges this questioning lengthened the time of the routine cell search, thereby encroaching on his leisure time.  (Doc. 2, pp. 9-12).

Plaintiff attached a copy of the disciplinary action and the subsequent grievances to his complaint.  The disciplinary charge underlying this case was written by Sergeant Kevin Starkey on December 6, 2013, and is based on events which occurred on December 4, 2013.  (Doc. 2, pp. 39-40).  The charges were failure to obey an order, insolence to a staff member, and out of place of assignment. (Doc. 2, p. 39).  The circumstances listed in the original incident report were as follows:

> On above date and while working in the garden Farm Zone 1, Cpl. Williams took the squad to a water break. Inmate Stewart, P. #151956 was trying to use the bathroom facing the parking lot. Cpl. Williams told him to step across the road. Inmate then tried to go on the picking crates. He then moved him over by the trailer and he used the bathroom. I, Sgt. Starkey could hear him saying something about a lawsuit. Inmate then went across the road and sat down. Major pulled up, I was talking to Major. Inmate Stewart got up, came across the road and tried to walk upon myself and Major sitting in the truck. I backed my horse up and [a]sked what he was doing. Inmate said "I am going to talk to Major." I gave him

---

[1] The actual issuance of the December 6, 2013, disciplinary was the subject of a prior lawsuit by Plaintiff in case number 6:15-cv-06023.  The case was dismissed as frivolous, and a strike was assigned pursuant to 28 U.S.C. § 1915(g).  Plaintiff again included a claim for "wrongful punishment" for the issuance of the disciplinary charge against Defendant Starkey in the case presently before the Court.  However, because Plaintiff's claim that the issuance of the disciplinary charge was retaliatory has already been dismissed as frivolous in a prior case, it will not be addressed again here.

2

> a direct order to stop. He became belligerent. Major stepped out, placed him in cuffs and hauled him in. End of statement.

(Doc. 2, p. 46 ). A disciplinary hearing action was conducted on December 17, 2013. The decision from that hearing, dated December 19, 2013, affirmed all charges except the out of place of assignment. (Doc. 2, pp. 39-40). Plaintiff wrote grievance OR-13-01624 on December 18, 2013. (Doc. 2, p. 43). On February 17, 2014, Defendant Kelley found his appeal to be without merit. (Doc. No. 2, p. 47).

Plaintiff wrote grievance OR-14-00136 on February 5, 2014. (Doc. 2, p. 42). He alleged Defendant Starkey came to his cell, accompanied by Sergeant Turner, to do a routine search of the cell. He alleged Defendant Starkey harassed him about the grievance he wrote against him in December, and "chewed out" his cellmate by asking him if he was Plaintiff's lawyer. He alleges these questions prolonged the time used for the cell search. He also alleges Defendant Starkey told him "I got something for you, wait until you come to field utility." *Id*. He alleges this cell search "took away from [his] reading, writing, and visiting in the day room with others. And he threatened me." *Id*. Plaintiff stated Sergeant Turner was present and "very professional" during the search. *Id*. In his response to the grievance, Defendant Starkey stated this was a routine search, but admitted "he asked inmate Stewart how he could lie on [a] grievance." He also stated Plaintiff's cellmate "started telling him policy and what [he] could do." He states he then asked the other inmate "if he was a lawyer and where he worked." He stated he did not threaten either of the inmates in the cell. (Doc. 2, p. 42). Plaintiff appealed the denial of this grievance. On April 1, 2014, Defendant Kelley found his appeal to be without merit. (Doc. 2, p. 48).

Plaintiff requests $200,000 in punitive damages and $200,000 in compensatory damages. (Doc. 2, p. 4).

## II. APPLICABLE LAW

Pursuant to the screening provisions of the PLRA, the Court must determine whether the causes of action stated in Plaintiff's Complaint (1) are frivolous or malicious, (2) fail to state claims upon which relief may be granted, or (3) seek monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915(A). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a defendant, acting under color of state law, deprived him of a right, privilege, or immunity secured by the United States Constitution or by federal law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. Defendants Threlkeld, Reed, Kelley, and Banister

Plaintiff failed to state a cognizable claim against Defendants Threlkeld, Reed, Kelley, and Banister. Plaintiff alleges Defendants Kelley and Reed "failed to correct" the issuance of the December 6, 2013, disciplinary charge when they reviewed his grievance. He alleges Defendant Threlkeld "wrongfully punished" him when he forwarded the disciplinary charge to a disciplinary hearing officer rather than dismissing it. Plaintiff alleges Defendant Banister "wrongfully punished" him when he assigned him restrictions based on the disciplinary charge. In sum, Plaintiff claims the issuance of the disciplinary charge by Defendant Starkey was retaliatory, and these Defendants compounded the retaliation by allowing the disciplinary charge to stand.

4

"[I]f the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules and regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Goof v. Burton*, 7 F. 3d 734, 738 (9th Cir. 1993). "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). A prison disciplinary committee's finding that the prisoner committed an actual violation "essentially checkmates" the prisoner's retaliation claim. *Henderson v. Baird*, 29 F.3d 1994 (8th Cir. 1994) *cert. denied,* 515 U.S. 1145 (1995).

In this case, Defendant Starkey wrote a disciplinary charge against Plaintiff. Plaintiff was afforded a disciplinary hearing, and one of his charges was reversed. The charges of failure to obey an order and insolence to a staff member were upheld. (Doc. 2, p. 45). There is no allegation that the disciplinary hearing was conducted in a way that would call the impartiality of the hearing into question. Plaintiff then filed and exhausted a grievance concerning the issuance of the disciplinary charge. This grievance was found to be without merit. (Doc. 2, p. 45-47). Thus, there is sufficient evidence to show he actually committed the infractions in the disciplinary charge.

Because there is sufficient evidence that Plaintiff actually committed the infractions in the disciplinary charge, the charge itself cannot be retaliatory. It therefore follows that Defendants Threlkeld, Reed, Kelley, and Banister could not have committed a constitutional violation by allowing the valid disciplinary charge to stand. It is not the role of this Court to second-guess the judgment of prison administrators on issues of prison management unless a

5

facially valid constitutional claim is raised. *Iron Eyes v. Henry*, 907 F.2d 810, 812 (8th Cir. 1990) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). Plaintiff failed to raise such a claim against these Defendants.

### B. Defendant Starkey

Plaintiff failed to state a cognizable claim against Defendant Starkey. In his complaint, Plaintiff alleges Defendant Starkey retaliated against him for protected speech by harassing and unlawfully questioning him about his December 18, 2013, grievance during a routine cell search; Plaintiff alleges this harassment lengthened the time it took to complete the cell search, thus reducing Plaintiff's leisure time. In his grievance OR-14-00136, Plaintiff additionally alleges Defendant Starkey threatened him for filing the grievance by stating "I got something for you, wait until you come to field utility." Plaintiff does not allege that the cell search itself was retaliatory, characterizing it as "routine" in both his complaint and grievance against Defendant Starkey. (Doc. 2, pp. 9-12, 41).

To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Filing a prison grievance is a protected activity. *Id*. at 991. Plaintiff has, therefore, satisfied the first element.

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different

6

reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citation omitted); *Made well v. Roberts,* 909 F.2d 1203, 1206 (8th Cir.1990) (same). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id. See also Dixon v. Brown,* 38 F.3d 379, 380 (8th Cir. 1994) ("[W]hen retaliatory conduct is involved, there is no independent injury requirement."). "Yet, there are some injuries so *de minimis* that they do not rise to the level of constitutional violation. 'It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.'" *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). "The ordinary-firmness test is . . . designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago*, 707 F.3d at 992 (8th Cir. 2013) (citing *Garcia v. City of Trenton,* 348 F.3d 726, 728 (8th Cir. 2003)).

Because nearly every otherwise routine administrative decision may potentially be viewed as a retaliatory act, it has been recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Further, the courts have recognized that prison officials must have broad administrative authority. *Id*. at 79. For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable); *see also Turner v. Mull,* 784 F.3d 485 (8th Cir. 2015) (mere timing of events alone does not establish the requisite causal link); *Atkinson v. Bohn,* 91

7

F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (speculative and conclusory allegations cannot support a retaliation claim).

Plaintiff alleges Defendant Starkey extended the length of the cell search beyond what was necessary by harassing him about his grievance. Defendant Starkey stated on the grievance response that he asked Plaintiff "how he could lie on grievance." He also asked Plaintiff's cell mate "if he was a lawyer and where he worked." (Doc. 2, p. 42). Plaintiff further alleges the harassment extended the length of the cell search, which encroached on his leisure time. Plaintiff does not state how long he expected a normal cell search to be, nor does he state how much time this particular cell search took. Plaintiff does not allege that he felt threatened by the questions, or that he was deterred from pursuing any grievances or lawsuits. Instead, he complains of his loss of an unspecified amount of leisure time. (Doc. 2, p. 12). At most, Plaintiff has made speculative and conclusory allegations about a *de minimis* retaliatory action. Such trivial matters are unlikely to deter a person of ordinary firmness from pursuing their First Amendment rights, and should be "weeded out" in order to reserve the Court's time for "real and substantial violations of the First Amendment." *See Santiago*, 707 F.3d at 992; *see e.g. Walker v. Bowersox*, 526 F.3d 1186, 1190 (8th Cir. 2008) (although purportedly retaliatory, directing others to give inmate an alternative meal rather than his usual special diet tray on two occasions was *de minimis*); *Morris v. Powell*, 449 F.3d 682, 686-687 (5th Cir. 2013) (even if retaliatory, being transferred from a job in the commissary to a less desirable job in the kitchens for about six weeks is *de minimis*, while a transfer to a more dangerous prison is not); *Burgos v. Canino*, 358 Fed.App'x. 302, 307 (3d Cir. 2009) (deprivation of a one-hour recreation period "did not rise to the level of an adverse action").

Plaintiff also alleges Defendant Starkey made a verbal threat, stating "I got something for you, wait until you come to field utility."[2] This also fails to state a cognizable retaliation claim.

Verbal threats may be sufficiently adverse to meet the chilling requirement, particularly if they are contextually supported threats of death or serious harm.  Speculative and conclusory, or *de minimis* allegations, however, cannot support a retaliation claim.  *See e.g*. *Santiago*, 707 F.3d at 991 ("threats of death, issued by a correctional officer tasked with guarding a prisoner's segregated cell, would chill a prisoner of ordinary firmness from engaging in the prison grievance process"); *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) (guard pointing a gun at inmate, cocking it, and threatening him with "instant death" immediately after inmate had testified against another guard sufficiently adverse); *but see Rustan v. Rasmussen*, 208 F.3d 218 (8th Cir. 2000) (unpublished) (allegations that Defendants harassed and verbally threatened him in retaliation for a grievance did not form the basis of a cognizable § 1983 claim); *Evenstad v. Herberg*, 994 F.Supp. 2d 995, 1001 (D. Minn. 2015) (alleged statement that "We'll be ramping things up" not actionable—"Without a more specific reference to [inmate] or what he might have coming, without a history of abuse or a pattern of threats, and unaccompanied by any menacing gesture, [the correctional officer's] statement simply is not sufficiently threatening to chill a person of ordinary firmness from continuing a protected activity."); *see also Dunbar v. Barone*, 487 Fed. App'x. 721, 723 (3d Cir. 2012) (unpublished) ("verbal threats and [a] few gestures of racial harassment" are not sufficiently adverse to support a retaliation claim.); *Riley v. Coutu*, 172 F.R.D. 228, 235 (E.D. Mich. 1997) ("Certain means of 'retaliation' may be so *de minimis* as

---

[2] Although not raised in his complaint, Plaintiff included this statement in his grievance.  This claim will therefore be addressed.

9

not to inhibit or punish an inmate's rights of free speech. Many verbal responses by officials of resentment or even ridicule would fall into this safe harbor of permitted response.")

In this case, Plaintiff alleges a single incident where Defendant Starkey stated "I got something for you, wait until you come to field utility." Plaintiff does not allege Defendant Starkey said anything further to clarify or expand upon this statement. Plaintiff does not allege there was a history of abuse or a pattern of threats from Defendant Starkey which might provide contextual support to permit an inference of serious threat from an otherwise vague and ambiguous statement. Plaintiff does not allege the statement was accompanied by any menacing gesture. Plaintiff does not allege anything happened to him when he went to work his field utility assignment. Plaintiff does not allege that he was fearful or was in any way discouraged from pursuing his First Amendment rights. At most, Plaintiff made a speculative and conclusory allegation concerning a *de minimis* statement by Defendant Starkey. This cannot support a claim of retaliation.

For the reasons set forth above, Plaintiff's Complaint should be DISMISSED WITH PREJUDICE. Further, this case is counted as a strike under 28 U.S.C. § 1915(g), and the Clerk is directed to enter a Section 1915(g) strike flag on this case.

Judgment will be entered accordingly.

IT IS SO ORDERED this 22nd day of March, 2016.

/s/ P. K. Holmes, III
HON. P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE